1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  TERRIONTE D. BUTCHER SIMS,

9                          Plaintiff,

10        v.

11  KING COUNTY CORRECTIONAL
     FACILITY, et al.,

12

13                          Defendants.

NO.  C15-662-JLR-JPD

REPORT AND
RECOMMENDATION

14

15

16

17

18

19

20

21

22

23

24

## **INTRODUCTION**

Plaintiff Terrionte D. Butcher Sims, a pretrial detainee at the King County Correctional Facility ("KCCF") in Seattle, Washington, brings this 42 U.S.C. § 1983 civil rights action against Sergeant Napoleon Rafanan, Corrections Officers Brian Cays, Curtis Logwood, and Ever Velasquez (collectively, "the Officers"), and the KCCF.  Plaintiff's central allegation is that the Officers retaliated against him for throwing urine on Sergeant Rafanan by punching him repeatedly in the face, bending his fingers and twisting his wrist, stripping him naked, and placing him in a cell where the water was turned off.  Dkt. 5 at 3.  Plaintiff also alleges that it took a long time for him to receive medical care after the incident.  *Id.*

REPORT AND RECOMMENDATION - 1

Liberally construing plaintiff's complaint, it appears he is alleging a constitutional excessive force claim, state law assault and battery claims, an inadequate medical care claim, and a municipal liability civil rights claim. Defendants have moved for summary judgment.[1] Dkt. 30. Plaintiff did not file a response. Having considered defendants' motion, the balance of the record, and the governing law, the Court recommends that summary judgment be granted in defendants' favor and this matter be dismissed with prejudice.

## BACKGROUND

**A.    Facts**

At around 7:40 a.m. on April 19, 2015, Sergeant Rafanan was reviewing the suicide observation sheets for KCCF inmates in 7 North, Lower B. Dkt. 36 at ¶¶ 2, 3. The pass-throughs between the cells and hallways were open so that inmate workers could remove breakfast trash and containers from each cell. *Id.* at ¶ 3. When Sergeant Rafanan arrived outside plaintiff's cell, plaintiff reached out the pass-through and threw a container of urine, striking Sergeant Rafanan in the arm, shoulder, neck, and face. *Id.* at ¶ 4; Dkt. 37 at ¶ 3. Sergeant Rafanan quickly closed the pass-through, informed Officer Velasquez what had occurred, and went to decontaminate his arms and face. Dkt. 36 at ¶¶ 4, 5.

Officer Velasquez noticed two other containers of liquid in plaintiff's cell. Dkt. 37 at ¶ 5. Sergeant Rafanan determined it was necessary to remove the containers from plaintiff's cell so that he would not be able to assault any other staff with his bodily fluids. Dkt. 36 at ¶ 6. Officers Logwood and Cays were summoned to assist with moving plaintiff to the adjacent cell. Dkt. 35 at ¶ 3; Dkt. 33 at ¶ 3. Officer Velasquez directed plaintiff several times to come to the pass-through to "cuff up." Dkt. 37 at ¶ 5. Plaintiff did not comply and instead lay down on his

---

[1] Defendants provided plaintiff with the necessary warnings pursuant to *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998). Dkt. 31.

REPORT AND RECOMMENDATION - 2

bunk. *Id.* Because plaintiff refused to come to the pass-through to cuff up, Sergeant Rafanan contacted Nurse Sueann Brent to ask whether there were any contraindications to the use of force, should it become necessary when removing plaintiff from his cell. Dkt. 36 at ¶ 8. Nurse Brent reported that plaintiff had no contraindications to being tased or pepper sprayed. *Id.* at ¶ 10; Dkt. 32 at ¶ 4.

Sergeant Rafanan withdrew his Taser and warned plaintiff to remain on his bed and not to move. Dkt. 36 at ¶ 11. Sergeant Rafanan entered the cell, along with Officers Velasquez, Logwood, Drake, and Cays. *Id.*; Dkt. 37 at ¶ 8; Dkt. 35 at ¶ 7; Dkt. 33 at ¶ 7. Plaintiff was lying on his bunk with a blanket over his face. Dkt. 35 at ¶ 7. An officer directed plaintiff to turn over onto his stomach to be handcuffed, but he did not comply. Dkt. 34 at ¶ 9. When officers attempted to turn plaintiff over, he resisted by clenching his fists and trying to pull away. *Id.* at ¶ 10; Dkt. 35 at ¶ 7; Dkt. 37 at ¶ 8; Dkt. 36 at ¶ 12. Sergeant Rafanan yelled loudly twice for plaintiff to stop resisting. Dkt. 36 at ¶ 13. To gain physical control over plaintiff, Officer Drake applied wrist and elbow joint locks, and Officer Logwood used a figure four leg lock to keep plaintiff from kicking. Dkt. 35 at ¶ 8; Dkt. 34 at ¶ 11. Once plaintiff was on his stomach, Officer Velasquez handcuffed him and Officer Logwood released his legs. Dkt. 35 at ¶ 9; Dkt. 37 at ¶ 9.

Plaintiff was directed to stand up to be moved to the next cell, but he refused and used passive resistance to make his body limp. Dkt. 36 at ¶ 16; Dkt. 35 at ¶ 9. Officer Logwood utilized a bent arm technique to help plaintiff walk. Dkt. 35 at ¶ 9. Once inside the new cell, officers removed plaintiff's handcuffs and smock, which was soiled. Dkt. 35 at ¶ 10; Dkt. 36 at ¶ 17. To prevent escalation of the situation, the water to the cell was temporarily shut off and the cups were removed. Dkt. 35 at ¶ 11. During the incident, no officer punched or struck

REPORT AND RECOMMENDATION - 3

1    plaintiff at any time.  Dkt. 36 at ¶ 24; Dkt. 33 at ¶ 10; Dkt. 35 at ¶ 13; Dkt. 37 at ¶ 11; Dkt. 34

2    at ¶ 17.

3            Following standard procedure whenever force is used, Sergeant Rafanan asked plaintiff

4    if he needed medical attention, and plaintiff responded affirmatively.  Dkt. 36 at ¶ 20; Dkt. 35

5    at ¶ 10.  At 8:40 a.m., Nurse Brent examined plaintiff.  Dkt. 36 at ¶ 23; Dkt. 35 at ¶ 12; Dkt. 32

6    at ¶¶ 5, 6; Dkt. 32-1.  Plaintiff was talking in a loud voice and pointing his finger, demanding

7    that Nurse Brent write up a "full report" of the "assault" by the officers.  Dkt. 32-1 at 2.  Nurse

8    Brent asked him about his current symptoms, but he did not answer and instead asked the nurse

9    to complete a "full report."  *Id.*  Nurse Brent observed that plaintiff was walking around his

10   cell without limping; did not have difficulty moving his jaw; had independent range of motion

11   in his upper extremities; and had no swelling, bleeding, discoloration, or abrasions on his chest,

12   arms, head, lips, or cheek bones.  *Id.*  She observed mild swelling on his upper eyelids, but

13   noted that his booking photo also appeared to show similar swelling.  *Id.*; Dkt. 32 at ¶ 8.  Thus,

14   she concluded that the appearance of plaintiff's eyelids, at baseline, included mild swelling.

15   Dkt. 32 at ¶ 8.

16   **B.      Procedural history**

17           Plaintiff initiated this action on April 27, 2015.  The Court ordered service of the

18   complaint.  After defendants answered, the Court issued a pretrial scheduling Order.  Once

19   discovery was completed, defendants filed the summary judgment motion that is currently

20   before the Court.  As noted above, plaintiff did not file a response.

21                                          **<u>DISCUSSION</u>**

22           Defendants argue (1) the Officers are entitled to qualified immunity on plaintiff's

23   excessive force claim because all force used was reasonable under the circumstances; (2)

24   plaintiff's state law assault and battery claims should be dismissed because the force used was

REPORT AND RECOMMENDATION - 4

1   reasonable; (3) defendants were not deliberately indifferent to a serious medical need; and (4)

2   plaintiff's municipal liability claim fails.  Dkt. 30.  For the reasons discussed below, defendants

3   are entitled to summary judgment on all claims.

4   **A.      Summary judgment standard**

5            Summary judgment is appropriate when a "movant shows that there is no genuine

6   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

7   R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the

8   nonmoving party fails to make a sufficient showing on an essential element of his case with

9   respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

10  (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.

11  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

12           The central issue is "whether the evidence presents a sufficient disagreement to require

13  submission to a jury or whether it is so one-sided that one party must prevail as a matter of

14  law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The moving party bears

15  the initial burden of showing the district court "that there is an absence of evidence to support

16  the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  The moving party can carry its

17  initial burden by producing affirmative evidence that negates an essential element of the

18  nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence

19  needed to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

20  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party

21  to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

22           In supporting a factual position, a party must "cit[e] to particular parts of materials in

23  the record . . . or show[ ] that the materials cited do not establish the absence or presence of a

24  genuine dispute, or that an adverse party cannot produce admissible evidence to support the

REPORT AND RECOMMENDATION - 5

fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[ ]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

**B.      The Officers are entitled to qualified immunity on plaintiff's excessive force claim**

The doctrine of qualified immunity protects government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent prongs:  (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654,

1    663 (9th Cir. 2015) (citing *Pearson*, 555 U.S. at 232).  Either prong may be considered first.

2    *Id.* (citing *Pearson*, 555 U.S. at 236).

3           The constitutional right at issue in this case is the right to be free from excessive force.

4    The Fourteenth Amendment's Due Process Clause protects pretrial detainees from excessive

5    force.  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015).  To prevail on such a claim, "a

6    pretrial detainee must show only that the force purposely or knowingly used against him was

7    objectively unreasonable."  *Id.* at 2473.  "[O]bjective reasonableness turns on the 'facts and

8    circumstances of each particular case,'" without regard to the officers' underlying intent or

9    motivation.  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The Court must

10   weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account

11   for the legitimate interests that stem from the government's need to manage the facility in

12   which the individual is detained, appropriately deferring to policies and practices that in the

13   judgment of jail officials are needed to preserve internal order and discipline and to maintain

14   institutional security."  *Id.* (internal quotation and citation omitted).  In assessing

15   reasonableness, the Court may consider "the relationship between the need for the use of force

16   and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer

17   to temper or to limit the amount of force; the severity of the security problem at issue; the

18   threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.*

19          The evidence, when viewed in the light most favorable to plaintiff, establishes that the

20   Officers' use of force was objectively reasonable.  After plaintiff threw urine on Sergeant

21   Rafanan, the sergeant reasonably determined it was necessary to remove the remaining

22   containers of urine from plaintiff's cell.  *See Kingsley*, 135 S. Ct. at 2470. Plaintiff was asked

23   to come to the pass-through to cuff up, but he refused. Dkt. 37 at ¶ 5.  As a result, the Officers

24   had to enter the cell to handcuff him.  Before entering the cell, Sergeant Rafanan confirmed

that there were no contraindications to the use of force, including using a Taser.  Dkt. 36 at ¶¶ 8, 10.  As a reasonable precaution, Sergeant Rafanan readied his Taser as the officers entered the cell.  *See id.* at ¶ 11.

An officer directed plaintiff to roll from his back to his stomach so he could be handcuffed behind his back, but he refused.  Dkt. 34 at ¶ 9.  Consequently, the officers moved in to physically position plaintiff for handcuffing.  *See id.* at ¶ 10.  Plaintiff statically resisted, and in an effort to gain physical control over plaintiff, Officer Logwood secured his legs using a figure four leg lock and Officer Drake applied wrist and elbow joint locks.  Dkt. 34 at ¶ 11; Dkt. 35 at ¶ 8.  The locks the officers used involved a reasonable amount of force to secure plaintiff, who was not complying with officers' directives, and did not pose a significant risk of injury to plaintiff.  Dkt. 34 at ¶ 16; Dkt. 35 at ¶ 8.  After plaintiff was handcuffed, Officers Drake and Logwood released the locks.  *See* Dkt. 34 at ¶¶ 11, 12; Dkt. 35 at ¶ 9.

Plaintiff was directed to stand up, but he initially refused and made his body limp.  Dkt. 34 at ¶ 12; Dkt. 35 at ¶ 9.  In response, Officer Logwood utilized a bent arm bar technique to maintain control of plaintiff's body.  Dkt. 35 at ¶ 9.  This technique prevented plaintiff from walking completely erect, but assisted him in walking (rather than remaining limp) and prevented him from hurting anyone while walking.  *Id.*  The bent arm bar technique involved only a reasonable amount of force to prevent plaintiff from harming staff while he was escorted to a clean cell, and did not pose a significant risk of injury to plaintiff.  *Id.*  After plaintiff was in the new cell, the handcuffs were removed.  *Id.* at ¶ 10.

As a matter of law, the Officers' use of force was reasonable.  The Officers used force only in response to plaintiff's refusal to comply with their directives.  The amount of force used was no greater than necessary to obtain plaintiff's compliance.  For example, after plaintiff was handcuffed, Officers Logwood and Drake released the leg, arm, and wrist locks.

REPORT AND RECOMMENDATION - 8

1    At no time did any officer punch or strike plaintiff.[2]  Dkt. 36 at ¶ 24; Dkt. 33 at ¶ 10; Dkt. 35 at

2    ¶ 13; Dkt. 37 at ¶ 11; Dkt. 34 at ¶ 17.  The medical records establish that the injury to

3    plaintiff—if any—was *de minimis*.  *See* Dkt. 32-1.  In short, the Officers did not violate

4    plaintiff's constitutional rights, and therefore they are entitled to qualified immunity.

5    **C.      Plaintiff's state law assault and battery claims must be dismissed**

6          Where an officer uses reasonable force under federal constitutional standards, he is

7    entitled to state law qualified immunity on any assault and battery claims brought under

8    Washington law.  *McKinney v. City of Tukwila*, 103 Wash. App. 391, 409 (2000) (finding

9    officers entitled to state law qualified immunity on assault and battery claims where the use of

10   force was reasonable under § 1983 standards); *Goldsmith v. Snohomish Cnty.*, 558 F. Supp. 2d

11   1140, 1156 n.8 (W.D. Wash. 2008) (same); *see also Anderson v. City of Bainbridge Island*,

12   472 Fed. Appx. 538, 540 (9th Cir. 2012) (affirming dismissal of state law assault and battery

13   claims where force was not excessive).  Because the Officers used reasonable force against

14   plaintiff, as discussed above, they are entitled to qualified immunity on plaintiff's assault and

15   battery claims.

16   **D.      Defendants were not deliberately indifferent to a serious medical need**

17         A pretrial detainee's right to receive adequate medical care is derived from the

18   Fourteenth Amendment's due process clause, rather than the Eighth Amendment's protection

19   against cruel and unusual punishment.  *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187

20   (9th Cir. 2002).  Nevertheless, courts apply the Eighth Amendment standards in cases

21   involving pretrial detainees.  *See id.*

22

23   ───────────────

24         [2] Although plaintiff alleges in his complaint that the Officers repeatedly hit him, such
     allegations are insufficient to defeat summary judgment.  *See Hernandez*, 343 F.3d at 1112.

REPORT AND RECOMMENDATION - 9

To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and internal quotation marks omitted). However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The evidence in this case, when viewed in the light most favorable to plaintiff, establishes that plaintiff did not have a serious medical need. Nurse Brent examined plaintiff after the incident and observed no signs of injury. *See* Dkt. 32-1 at 2. Although she noted mild swelling on plaintiff's eyelids, she compared his appearance with his booking photo and determined that, at baseline, plaintiff's eyelids appeared mildly swollen. Dkt. 32 at ¶ 8. When she asked plaintiff to describe his symptoms, he refused. Dkt. 32-1 at 2. Thus there is no evidence of any medical need, much less a need that could have resulted in further significant injury or the unnecessary and wanton infliction of pain. *See McGuckin*, 974 F.2d at 1059. Because plaintiff did not have a serious medical need, the Court need not consider whether defendants were deliberately indifferent. Summary judgment should be granted to defendants on plaintiff's medical claim.

REPORT AND RECOMMENDATION - 10

**E.** **There is no evidence supporting a claim against King County**

A local government unit or municipality, such as King County, can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). However, "municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638-39 (9th Cir. 2007). As discussed above, the Officers did not violate plaintiff's constitutional rights. Therefore, there is no basis upon which to hold King County liable.

## CONCLUSION

Based on the foregoing, the Court recommends that defendants' motion for summary judgment, Dkt. 30, be GRANTED and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 28, 2016**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 29, 2016.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 7th day of January, 2016.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11